**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 05a0434n.06
Filed: May 25, 2005

No. 03-2131

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,
    *Plaintiff-Appellee,*

                                              On Appeal from the
    v.                                        United States District Court for
                                              the Eastern District of Michigan

HUSSEIN AMR,
    *Defendant-Appellant*.

_____/

BEFORE:  KENNEDY and COOK, Circuit Judges; and VARLAN, District Judge.[*]

KENNEDY, Circuit Judge.  A jury found Defendant Hussein Amr guilty on a total of 22 counts: three counts of health care fraud, 18 U.S.C. § 1347(1) and (2), nine counts of mail fraud, 18 U.S.C. § 1341, three counts of illegal kickbacks, 42 U.S.C. § 1320a-7b(b)(2)(B), three counts of money laundering, 18 U.S.C. § 1956(a)(1)(A)(i), and four counts of engaging in illegal transactions, 18 U.S.C. § 1957.  The jury also returned a forfeiture verdict in the sum of $1,015,384.55. Defendant appeals raising one issue, namely, that the district court erred when it permitted the government to introduce evidence establishing the high profit margin that the Defendant received on selling power wheelchairs because the evidence was either irrelevant to any issue in the case, or, if relevant, was overly prejudicial.  For the reasons that follow, we AFFIRM.

_____

[*] The Honorable Thomas A. Varlan, United States District Judge for the Eastern District of Tennessee, sitting by designation.

1

BACKGROUND

In 1995, Hussein Amr started United States Medical Supply (USMS), a company which dealt in durable medical equipment. Durable medical equipment includes products such as hospital beds, electric scooters, walkers, manual wheelchairs, and power wheelchairs. In February 1998, pursuant to a complaint of Medicare billing improprieties from Amr's office manager, an FBI agent began an investigation into possible health care fraud by Hussein Amr and his company. After an investigation, Amr was indicted on November 2, 2000. The indictment charged a scheme to defraud Medicare, Michigan Medicaid, and Blue Cross/Blue Shield of Michigan (BC/BS) by inducing patients to purchase power wheelchairs they did not want or need, offering free lift chairs to induce patients to purchase power wheelchairs, failing to offer patients the option of renting rather than purchasing the wheelchairs, charging for standard accessories which were already included in the wheelchairs, and inflating repair charges.

The vast majority of the durable medical equipment that USMS sold were power wheelchairs. The government introduced evidence that USMS would purchase power wheelchairs for $2,250. USMS would bill medicare $4,300 for the wheelchair and an additional $800 for accessories, resulting in a request of $5,100 from Medicare. USMS would then receive a co-pay (usually either from Medicaid or BC/BS) of $1,200, resulting in a total of $6,300, and a profit of over $4,000, from the sale of one power wheelchair.

Part of this profit USMS earned on each chair it sold was obtained by charging Medicare for more expensive products than that which it actually provided the patient (a fraudulent practice known as "up-coding"). For instance, on every power wheelchair that USMS sold during the period covered in the indictment, USMS billed Medicare $360 for a gel seat cushion.

2

However, every power wheelchair USMS sold during that period, except for one, contained only a foam cushion, which costs $60. Part of the profit that USMS earned on each chair was also obtained by charging extra for accessories that came standard with the chairs. For instance, USMS would charge Medicare separately for accessories such as tire and electric controllers, which were standard equipment on all power wheelchairs.

The government introduced evidence that Amr steered patients toward purchasing power wheelchairs rather than other cheaper equipment, such as a lift or manual chairs. For instance, although it is a violation of Medicare rules to steer a patient toward purchasing a power wheelchair without advising the patient that he or she has the option to rent or lease the chair rather than to buy it outright, no one at USMS ever advised the patients that they had a right to lease the chairs. Moreover, when USMS would receive calls from patients who were primarily interested in purchasing a lift or a manual chair (which can cost as little as $125), Amr would talk the patient into ordering a power wheelchair, often offering a lift chair or manual wheelchair for free. It is a violation of Medicare rules, however, for a DME supplier to steer a patient to the purchase of a power wheelchair if the patient has only expressed interest in a lift chair. As evidence that Amr steered patients toward the purchase of electric wheelchairs, the government offered testimony that more than half of the patients who purchased wheelchairs from USMS during the indictment period neither wanted nor needed a power wheelchair.

ANALYSIS

The Defendant argues that the district court abused its discretion when it permitted the government to introduce evidence establishing the high profit margin that the Defendant earned when he sold power wheelchairs because, the Defendant asserts, this evidence was not relevant

3

to any issue in the case (and thus should be precluded pursuant to Fed. R. Evid. 401), or, if relevant, its probative value is substantially outweighed by the danger of unfair prejudice (and thus should be precluded pursuant to Fed. R. Evid. 403).

The Defendant argues that the evidence of the high profit margin he earned on selling power wheelchairs is not relevant since there was no allegation that USMS was gouging Medicare on the price it was charging for wheelchairs. Although it is true that there was no allegation that the Defendant was gouging Medicare on the price it was charging for the power wheelchairs, the government did allege that the Defendant committed fraud by steering patients who only wanted to purchase lift or manual chairs (and who in most cases did not even need power wheelchairs) into purchasing (rather than renting or leasing) power wheelchairs. The evidence of the high profit margin that the Defendant earned on selling power wheelchairs was highly relevant to showing why the Defendant, in violation of Medicare rules, steered patients who expressed interest only in lift or manual chairs to purchase power wheelchairs and did not inform the patients that they had a right to lease the chairs. He did so because otherwise he would not have obtained the over $4,000 profit per power wheelchair sold. Thus, since the evidence was relevant to establishing the Defendant's motive, the district court properly admitted the evidence pursuant to Rule 401.

The Defendant next argues that, even if this evidence is relevant, it should not have been admitted since its probative value is substantially outweighed by the danger of unfair prejudice. In support of this argument, the Defendant asserts that many people might consider the Defendant's mark up on the wheelchairs excessive and fraudulent on its face. Rule 403 provides that relevant "evidence may be excluded if its probative value is *substantially* outweighed by the

4

danger of unfair prejudice . . . ." (emphasis added).  This Court has previously noted that "[f]or a Rule 403 violation to occur, the admitted evidence must result in "unfair prejudice in that 'the evidence must suggest a decision on an improper basis.'" *United States v. Bonds*, 12 F.3d 540, 567 (quoting *United States v. Schrock*, 855 F.2d 327, 333 (6th Cir. 1988).  "Unfair prejudice does not mean the damage to a defendant's case that results from the legitimate probative force of the evidence." *Id*. (citations and quotation marks omitted).  In this case, the evidence of the high profit margin was prejudicial against the Defendant only in the sense that it was damaging to the Defendant's case, and not in that it suggested a decision to the jury on an improper basis.  Thus, we conclude that the district court did not abuse its discretion in finding that the probative value of the evidence of the high profit margin that the Defendant earned on selling power wheelchairs was not substantially outweighed by the danger of unfair prejudice.

For the foregoing reasons, we AFFIRM.